Good morning. If it pleases the Court, my name is Michael Bigelow and I represent Appellant Michael Staggs. Clear error in sentencing. I submit to the Court there was plain error. The guideline level was six. No dollar amounts were pled, no dollar amounts were proved. The other sentencing factors were neither pled nor proved. By Blakely and Booker, six amendment rights were violated in that they were not proved to a jury beyond a reasonable doubt. The error is plain. It's clear under the law that existed at the time. And clearly, after Booker, increasing the punishment by factors that were not pled violates the Sixth Amendment. It affected Appellant's substantial rights. He was prejudiced. He got 87 months, and he should have gotten six if the thing had gone to the – at least according to the findings made by the jury. And he was – I assume he's incarcerated, right? I beg your pardon? He's incarcerated right now? He is incarcerated right now. And how much time has he served on his sentence? I'm awfully sorry, Your Honor. I cannot hear you. How much time has he served on his sentence? The counsel would know better than I. He went on July 2002. Okay. Thank you, counsel. I wasn't trial counsel. I apologize. No, that's all right. I can discuss reasonable probability of a different sentence if the Court would like. I have a theory about what might happen if the Court is interested, but I sort of like the Ninth's decision as opposed to the Eleventh's. All right. I submit that it is reasonably probable that Judge Damrell will reconsider the sentence. There are factors that were not available. They were available, but were not addressed and which he could not consider. Specifically, this guy served two terms flying a helicopter in Vietnam, picking up 18-year-old kids, sitting on a helmet, hoping that Charles David's small-arm fire, when it came through his ship, wouldn't disembowel him. That's something I've appeared in front of Judge Damrell. He is a reasonably, an eminently reasonable jurist. I believe that he would be affected by that. I'm not suggesting that. We don't know what he would do. We just know that he would be free of the constraints of the Guidelines. That is absolutely correct, Your Honor. Isn't that right? Yes, that is. The Eleventh seems to say that we have to know what he would do. You don't know what he would do. He would be unconstrained by the restrictions of the mandatory aspects of the Guidelines. That's correct. Now, the other point that I would like to make in all of this, and that is the prosecution's propensity argument, I hate to characterize it as misconduct. I characterize it, I frame it in the context of misconduct because that is what is required. You're talking about the statements during closing argument. I'm talking about his statements during closing argument, Your Honor. The prosecutors. The prosecutors, yes. Yes. I choose to refer to those as misstatements or poor choice of language with the same effect as misconduct. I've known Mr. Arguelles for a number of years now. I've been involved with him. He does nothing. Misconduct is not in his forte. Nonetheless, in what, in the context of what this Court and other courts have characterized as misuse of language, it is misconduct. Counsel, in view of the limiting instructions and the extensive evidence of guilt, what effect did those statements have on the trial as a whole? I agree with the Court and with the prosecutor that reference was made on at least two occasions and perhaps even three to the instruction that says that this evidence can be used only for knowledge and intent. And if I may refer the Court to the government's brief at page 23, the last paragraph. He argues there what I contend he ought to argue during trial. He argues Staggs knew the programs were not, in fact, safe and highly profitable. That seems to me to be a reasonable argument based on the government's position and perhaps the evidence. And the government goes on in its brief. And he knew that there was no confidential overseas medium. This shows an intent. It shows knowledge from the past to the forward. But that is not what the government argued. The government argued these guys did it before. These guys, Mr. Staggs, did it before. He did it again. He did it the government argued that same point repeatedly that could not have not had, in fact, on the jury, regardless of the instruction that's given. The government simply pointed to the instruction, and the judge read the instruction, but with, after being hammered, a pejorative term to be sure, but after being hammered by the prosecution that you can't turn these guys off. It's what they did before. It's what they're doing now. That is propensity, plain, pure, and simple. He referred to them as con men, if I remember correctly, when I read the ---- I'm sorry, Your Honor. He referred to them as con men. He did refer to them as con men. That's and he did refer to them as con men. Thank you, Your Honor. The only ---- the only evidence of mens rea, and I argue this in my brief, but the only evidence of mens rea, which is, after all, the crux of the prosecution's case, the only evidence of mens rea, mens rea is the agent's opinion that what they were engaging in is fraud, was fraud, and the evidence of mens rea is the agent's opinion that we get from that reason. If they had an altitude defect, that would include FDI, FDD, IFR, and the other prior act referred to, but mostly IFR. And IFR may have been a fraud. The argument ---- the defense argument during trial was that he was a victim of that as well. IFR was a Ponzi scheme. This may or may not have been a Ponzi scheme. It may have been a similar kind of scheme. It was a high-yield, low-risk investment opportunity. It may have been fraudulent. No money took ---- no money transpired. No money was lost in this case. So to categorically say that this is a Ponzi scheme, IFR we know was a Ponzi scheme. That's the only ---- that's the only evidence there was. And so when the prosecutor stands up and he says, these guys are con men, they're doing the same thing they did before, you can't turn them off, they have a propensity to commit fraud, it can't help but affect the jury's thinking. Now, Agent Cawthon's ---- Agent Cawthon's opinion, it seems to me that opinions are opinions are opinions, and this is a case in which we have to look at what is the This is just another of a long example of prosecutors taking advantage of agents' investigation and characterizing it, and admitting it, offering it for admission, and courts accepting it, trial courts accepting it as permissible opinion evidence. Rather than relying on the jury to interpret the fruits of their investigation, they're getting right to the bottom line. Well, were these drugs for sale? In my opinion, yes, they were. Was this a fraud? Well, in my opinion, yes, it was. Over and over and over again, we are seeing these kinds of trials in the district court not unlike this. What evidence was there of mens rea other than Agent Cawthon saying, this thing's a fraud? Now, in my brief, I go at great lengths to explain why what he said is the same as saying it's a fraud, and I'm not going to reiterate that. But it also has to be plain error in this case, right? I'm sorry? There was no objection at trial? There was no objection at trial, and trial counsel and I have gone around and around on that one. Well, whether you've gone around and around with him or not doesn't help us. It's plain we have to review for plain error, correct? So tell me why is this plain error? It is plain error. What's your best case that says it's plain error? His fair trial, his right to a fair trial was impinged by the admissibility of the evidence which led to Cawthon's testimony. That would be the prior act. It's plain error. Well, I've explained the prejudice. The prejudice is palpable, and beyond that, Your Honor, I can go no further, and I apologize. Not for want of trying, however. The prosecution in his brief argues that, well, among other things, the prior conduct was inextricably intertwined and cites the DeGeorge case. And I submit to the Court that George, at least as I read it, and I really could be wrong, I don't think I am, but DeGeorge is inapposite, because in that case, the DeGeorge case, if you will, included a transaction that was part of the transaction, part of a tangible – there was a tangible linkage, a tangible linkage between the two schemes. There wasn't just a similar mens re. The fraud in the second scheme involved the same tangible object, whether it was a transaction or whether it was the boat itself. They involved the same tangible thing. Here, the only similarity is the mens re, if you will, and I suggest that that is not enough to argue that the two were inextricably intertwined. And with that, if the Court has any additional questions, I would be more than happy to respond. I'd like to save the time for rebuttal, and we'll hear from the government. Thank you very much. May it please the Court. My name is James Arguelles. I represent the United States. I will try and respond to the points and kind of the order they were raised, but, of course, if the Court would like me to address one issue or another prior, the Court, I'm sure, will ask. One thing I did want to point out, Mr. Bigelow has harped on and on and on how there was no evidence of the mens re other than his prior participation. That's just not true. There's multiple evidence. The government proved at trial that Staggs had lied to the undercover investigators about the return, the program he was currently in. The government proved that Staggs lied to the undercover investigators when he told them, in a half an hour, I can get a full FBI background check on you. Staggs lied about the generals. Staggs claimed he had access to high-level Air Force generals and retired NSA directors who would verify the legitimacy of his program. That is clearly a material statement when you're pitching a promotion. Government proved that both of those generals did not exist, was no former NSA director. At trial, on cross-examination, when Staggs was asked about that, he essentially, he admitted that he lied. What he said was, well, I had one conversation with some guy who said he was in the Air Force. He said he could check people out. Completely different from what he told the investigators, the undercover agents on the tape. Staggs lied about this Julia Howell woman, on tape, told the investors, we've got a connection with a woman named Julia Howell, Bank of America. She knows these programs, she'll get us set up, she'll help you through. Julia Howell testified. She didn't know Staggs, had never seen him before, didn't know anything about these programs. Another lie. So the record was full of Staggs lies. He was lying all over the place. The prosecutorial misconduct issue, the defense takes snippets out of context. When you read those snippets in context, as the government puts out in his brief, there's no, the government never argues he did it before so he had to do it again. What the government argues is, and what this case comes down to, is Staggs' knowledge and intent. And when Staggs has promoted four of these programs before he gets to the charge scheme, every single one of those programs has turned out to be a fraud, and every single one of those programs, all the investors lost the money. That is overwhelmingly powerful evidence that he knows is a fraud. It's clearly admissible under 404B. It's clearly powerful. I understand why Staggs doesn't like that argument because it kills him. As counsel has to concede, no less than five times Judge Damrell instructs a jury to go so far as to tell the jury, look, we're not trying to prove that Staggs was guilty in IFR or that he fraudulently promoted IFR or any of the prior programs. We tell the jury that. We say, what those, what that evidence comes in for is knowledge and intent. Right.  Well, I respectfully disagree, Your Honor. I think what it means is this guy has done it four times prior. He's lost every time prior. He knows. He has the intent and he knows when he's promoting this scheme that it's a fraud. I don't know how else you can, I mean, it's 404B evidence. It's admissible. You have to be able to argue it. Well, sure. But, I mean, I'm just saying that it's not, the curative instruction may save you on that. But if you didn't cross the line on propensity, you came off the close. And I respect the Court's view. I would point out, I mean, obviously, I disagree with it, but, of course, I respect the Court's view. I would point out that this Court has held in McChristian that, I mean, they made the same objection to the trial court. And trial court said no, no, counsel is just arguing knowledge and intent. And in McChristian, this Court has pointed out that you have to give considerable deference to the trial judge who sat through, saw the argument in context. And then, of course, I would point out that counsel has pointed to virtually no cases that would say that the misconduct here, even if it did approach line or briefly went over it, given the curative instructions, given the repeated admonitions, this Court has never held that that justifies reversing the conviction. And I would submit that this is not that case. It's not even close. On the issue of Special Agent Cawthon testifying as an expert, Special Agent Cawthon was not offered as an expert. He was not admitted as an expert. Defense counsel never objected to him as an expert. As I put in my brief, it's the exact opposite. On the record, defense counsel stated he had no quarrel with Special Agent Cawthon testifying that he had previously told Staggs that IFR was a fraud. What Special Agent Cawthon testified to was that he had investigated IFR. IFR turned out to be a gigantic Ponzi scheme. All of the investors were sent an information sheet. And after it was shut down, Special Agent Cawthon called a bunch of the promoters, a bunch of the investors, one of them he called was Staggs, and he basically said he never said that Staggs was reporting a fraud. He basically said, look, that IFR program you're involved in, it turned out to be a big Ponzi scheme, so we're just putting you on notice that schemes that promise the moon with absolutely no risk are fraud, and you should avoid them. And Staggs on the phone says, yes, I'm going to take your advice to heart. I agree. What happened six months later, we got him on tape pitching the same scheme to an undercover agent. But that's it. At no time does Special Agent Cawthon ever say that Staggs is a fraudster or that Staggs did anything wrong in IFR. He just put in Staggs on notice, hey, that program you're involved in, it turned out to be a fraud, so you really shouldn't be doing any more of those. That's it. He says nothing about the charge scheme. In fact, in the Rogers case, this Court held that that same exact identical IFR sheet sent to a promoter for the same reason was admissible. In the Rogers case, you had a guy, Velton Rogers, promoting fraud schemes. Evidence came in that Rogers was an IFR promoter, just like Staggs,  And the evidence came in that even after he received it, he kept on promoting his schemes. And the Ninth Circuit held that in a public decision, that evidence was admissible to show notice. It's not hearsay. There's nothing – it's not improper 404B. It's admissible to show notice. This Court has held in SIACOM, just – you know, in SIACOM, this Court held that evidence of the defendant's And the quote is, if defendant did not care about the illegality of her actions after being warned, it is fair to assume she knew the program was unlawful and didn't care. That's exactly what – that's all Coughlin's doing here. There's no expert – there's no expert opinion. As to the 404B, inextricably intertwined, government argued both at trial. Judge Damrell never made a decision. He let it in. It comes in either way. The government submits it is inextricably intertwined. The indictment specifically charged that Staggs promoted these programs after being put on notice by the FBI out there fraudulent and after participating in prior fraudulent schemes, and it listed those schemes by name. So if the government's going to prove up it's an indictment and prove up what it's charging, it's got to get that evidence in. Even if it's not – you can go either way. It's 404B. It's not inextricably intertwined anyway. You know, the Court – this Court in Rood, it's almost directly on point, they say evidence showing that he previously promoted high – high prime bank, high yield schemes with absurdly high rates of return is admissible. In the Blitz case, same thing. You know, did the – Staggs' counsel makes no – makes no mention of the Ninth Circuit precedents, makes no attempt to distinguish it. He can't. I mean, it's clearly admissible under 404B. Finally, unless the Court has any other questions, I'll just wrap up briefly with the – with the sentencing issue. It's the government's position that this case does not need to be remanded for resentencing. Booker didn't – did not, did not hold that defendant has a constitutional right to have the jury make sentencing findings. That was Blakeley. We're not operating under Blakeley anymore. Booker held that a constitutional jury requirement, that mandatory requirement, is incompatible with the Federal Sentencing Act. And as this Court recognized, basically Booker says to the judges, to the sentencing judge, you should use the guidelines, take them into account, maybe as a starting point, but you're free to go anywhere within the range. So – and Staggs admits he did not raise any Booker-Blakeley objection to sentencing. So we're in a plain error test. And under the third prong, Staggs bears the burden to show it would come out differently. Now, the trial court, Judge Damrell sits with the entire trial, sees all the evidence, makes findings by clear and convincing evidence on loss amount, obstruction, and rule in the offense. The government submits that this case gets remanded.  There's no reason for him not to. He's already seen all the evidence. As far as the fact that, well, Judge Damrell may give him a lower sentence considering the military. On the record, Judge Damrell said one of the reasons I'm giving you the low end is because I recognize your prior military service. He already took that into account. The government submits it. There's just — You don't know what Judge Grahamrell would do if it were sent back to him for resentment. No, Your Honor, of course. And as you said before, but — But he's no longer mandatory. True. But defendant — And the direction is not that he's free to sentence within the range. You always were free to sentence within the range. The point is, is that that guideline range that the judge arrives at is just that. It's a guideline that's no longer binding, and the judge is no longer constrained by the limitations in the sentencing guidelines. I agree, Your Honor. So you don't know what Judge Grahamrell would do here, and you don't know what additional arguments would be made in support of a new sentence. But, Your Honor, it seems that you're shifting the burden on the government to prove that things wouldn't come out different when it is the defendant who bears the burden to show things would come out different. And I don't think the defendant can come close. This is not a case — let me distinguish this from the — I know this Court just came out with the Ameling decision, the second Ameling decision. In Ameling, the second Ameling, the defendant pleads guilty. There's no trial. The judge considers evidence that this Court correctly calls multiple levels of hearsay. In Ameling, there is a very good chance that that defendant has a good — that defendant — that is a defendant who can actually show, when I go back, I'm going to get a different sentence. This is not — this is much different than Ameling. This is a judge who had all the facts before him in a trial and made the findings by clear and convincing evidence. The government, again, not to keep beating a dead horse, but Staggs has to show that things would come out different. And I agree that, yes, the judge is not bound by the guidelines. He can go anywhere he wants. Although, I would submit that under Booker, Booker seems to make clear that you have to start with the guidelines and you have to have — the guidelines are going to be presumptively a reasonable sentence. And you have to have good reasons to — Booker doesn't say that. Well, Booker puts a lot of emphasis on the guidelines. Booker doesn't — Booker doesn't say that the guidelines — that it's a presumptively — No. A presumptively reasonable sentence. I'm sorry, Your Honor. I would submit that it doesn't. You're correct. The government's position is that in light of how much emphasis Booker puts on the guidelines, says how important the guidelines are, the guidelines of uniformity, continuity, that Booker at least seems to say you need to start with the guidelines and you need to have good reasons to go — Booker doesn't tell the judge zero to 20 anywhere you want. Booker says, no, you're going to start with the guidelines. We put so much emphasis on the guidelines and you better have good reasons to go away from the guidelines. But one of the very, I think, the difficult issues in this case is the amount of intended loss. Of course, there's a finding on that, but that increased it, the sentence, by an enormous amount. So — Your Honor, I agree. But the issue here is there's no dispute it was a $10 million scheme. They had pitched a $10 million scheme. They had agreed to a $10 million scheme. The undercover agent said, yes, we're going to give you $10 million. It was a $10 million minimum scheme. So before Judge Damrell, Staggs tried to argue, like he tried to argue to the jury, well, look, Judge, this was — this was a guarantee. No money was going to be lost, so no money would be lost. And Judge Damrell said, well, you made that argument to the jury and they rejected it and I'm going to reject it as well. This was a fraud scheme. So the loss amount is a lot. I agree. And the loss amount is what's driving the sentence. But there's really no — there's no issue on the loss amount. It's a $10 million scheme. It's a $10 million loss. Right. But it's not mandatory anymore that he would apply that. True. True. I mean — I mean, that's the difference, is you have a — I guess I probably didn't articulate my question probably correctly, but you have a finding as to the loss amount. But now the loss amount doesn't make the sentence mandatory within a range. So that could change things on remand. True. But, I mean — You don't know. I don't know. We're all looking at — I agree. I mean, if Judge Damrell were here, we could ask him and he would say, he could tell us, no, no problem. Well, I mean, I would just submit, given Judge Damrell's comments on the record, both when he remanded Staggs and when he sentenced him, I don't think it's going to get any better. I think Judge — It could get worse. It could get worse, right? Right. That's — Let's back on an open record in any event, as well. Yeah. We'd go back on an open record. But I guess I'll just close by again reminding the Court that even Booker itself, the Supreme Court says, we don't anticipate every decision is going to be remanded for resentencing. Right. And I think Booker's saying cases like Ameline will go back, where there's clearly problems. I don't think the Supreme Court — I mean, again, I think the Court is doing some burden shifting to the government here, saying the government's got to prove that things would come — would be the same, and I would respectfully submit that's not the point of our test. The point of our test would be the defendant has the burden to show things would be different. On this record, given the judge's findings, given the judge's comments at sentencing, given the judge's comments on remand, I don't think he can come close to showing that he's going to do any better. Setting aside the third prong, the fourth prong says — You have to refresh me. Did he turn down any of your requests for enhancements? I don't believe he did, Your Honor. I think those are the only three at issue. Okay. And I would also note on the record that Staggs himself at sentencing admitted, yes, I was a leader. You're right, Judge. I was the leader. So he's basically — I mean, even under the old Blakeley standard, he's already admitted the leadership role. And then the fourth Booker prong — the fourth prong, government would submit — and again, I'm not — I know that Booker doesn't say presumptively reasonable, but the government would submit that a sentence within the Guidelines is reasonable. This defendant was sentenced within the Guidelines on facts made by — under clear and convincing finding. It is a reasonable sentence. And to leave this sentence, which is the low end of the Guidelines, the government submits does not affect the fairness, integrity, public reputation. So government submits, you can't make the third or fourth prong. Again, I thank the Court. I definitely enjoyed this argument. If the Court has any other issues for me, or otherwise, I'll sit down. Thank you. Judge Graber, do you have any questions? No, I don't.   Thank you, counsel. Very quickly. It seems to me when the objection is made beforehand, the instruction doesn't save the government. There was an objection at least tangentially, I believe, even prior to the beginning of the opening argument, and certainly there was prior to the government's reply with respect to propensity. And I submit that that does — that the instruction doesn't help there. And I will — I will agree, because I would be silly not to, that the letter, the notice, probably does provide notice. It probably does give him notice. There's a — there's enough there in that letter to suggest that this particular kind of conduct might be fraudulent. But that still, I submit, does not mean that Crofton can stand up there and say IFR was a fraud. In my opinion, IFR was a fraud. That's the jury's problem, province. That's the jury's job. Can't stand up and say this scheme is a fraud, the present scheme. That's the jury's job. I like juries. Thank you. Unless the Court has any questions. Thank you, counsel. The case just heard will be submitted. Thank you both for your arguments. The next case on the oral argument calendar this morning is Sasson v. Sokoloff. Counsel. Good morning.
judges: Thomas, Graber, Paez